WALTER E. HELLER & COMPANY, INC., A CORPORATION, ASSIGNEE OF THE PEERLESS CORPORATION, PLAINTIFF-RESPONDENT, v. THE HAMMOND APPLIANCE CO., INC., A CORPORATION OF NEW JERSEY, DEFENDANT-APPELLANT.

Argued May 5, 1959—Decided June 1, 1959.

Mr. *Sam Weiss* argued the cause for plaintiff-respondent (*Mr. Samuel B. Feld,* attorney).

Mr. *J. Mortimer Rubenstein* argued the cause for defendant-appellant.

PER CURIAM. Plaintiff assignee sued for the price of goods sold and delivered by its assignor, an appliance dealer. Defendant asserted that the sale had been rescinded and counterclaimed for reasonable storage charges arising from the seller's failure to retake the articles in accordance with

the agreement of rescission. The trial court dismissed claim and counterclaim. The Appellate Division reversed and directed the entry of judgment for the agreed purchase price. 52 *N. J. Super.* 332 (*App. Div.* 1958). We granted certification. 29 *N. J.* 61 (1959).

■ The Appellate Division found as a fact, and we agree entirely, that after the sale and delivery to defendant the transaction was rescinded by mutual agreement, because the articles were in a defective condition. Thus the transaction was undone. *Driscoll v. Burlington-Bristol Bridge Co.,* 28 *N. J. Super.* 1, 4 (*App. Div.* 1953). At that time, also, the seller agreed to retake them. This was never done, however, in spite of defendant's demands to bring it about. Almost a year after the original delivery, defendant began to repair the defective appliances, in some instances using parts from some of the others still in its possession. These were sold in the regular course of business at varying prices depending on their condition. Ultimately, 27 of the 50 involved in the transaction with plaintiff's assignor were sold. The remainder were still in defendant's possession at the time of trial.

The Appellate Division held that defendant's course of conduct with respect to the repair and sale of the appliances constituted a waiver of the rescission and accordingly established liability for the original purchase price.

■ Upon the happening of the rescission, defendant became a bailee of the goods, *cf. N. J. S. A.* 46:30–75(5), and the title reverted to the seller. However, the seller, having undertaken to reassume possession, was under a duty to do so within a reasonable time. Not only did failure to perform that duty create a liability for reasonable storage charges, but defendant was not obliged to retain possession indefinitely. On the contrary, under the circumstances here present (and we need deal only with these circumstances), he was entitled to undertake a good faith sale without further notice and to hold the proceeds for the benefit of the seller subject to certain rightful credits. *Cf. Rubin v.*

*Sturtevant,* 80 *F.* 930 (2 *Cir.* 1897); *North American Contracting Corp. v. Haley,* 140 *A.* 2d 314 (*D. C. Mun. App.* 1958); *Baker v. J. C. Watson Co.,* 64 *Idaho* 573, 134 *P.* 2d 613 (*Sup. Ct.* 1943); *Kahn v. J. C. Management Corporation,* 59 *N. Y. S.* 2d 547 (*Sup. Ct.* 1944), affirmed 269 *App. Div.* 1055, 59 *N. Y. S.* 2d 625 (*App. Div.* 1945); Annotation 24 *A. L. R.* 1445 (1923); 3 *Black, Rescission and Cancellation* (2d ed. 1929), § 629; 3 *Williston, Sales* (*rev. ed.* 1948), § 498. And see *Uniform Commercial Code, section* 2–711(3), and *comment* 2.

The statement of principle in *Black, supra,* is clearly applicable by analogy, although the facts on which it is designed to operate are not precisely the same as in the present situation:

"When the seller of goods persistently refuses to take them back, after being notified of the rescission of the sale by the purchaser for sufficient cause, it is proper, if not obligatory, for the purchaser to take such measures as are expedient to save unnecessary loss to the seller, and if the best method of accomplishing this end is to sell the property (as, in the case of perishable goods) he may sell it 'for account' of the vendor for the best price obtainable, and retain out of the proceeds enough to reimburse him for necessary expenses, and hold the balance subject to the vendor's demand. * * * But one selling property for account of another in this manner must act with reasonable promptness. He will be entitled to storage charges and other expenses only for a reasonable length of time, and whether he has waited an unreasonable time or incurred unreasonable expense, before selling the property, is a question of fact for the jury."

Accordingly, we are of the view that because of the unreasonable delay of the seller and the plaintiff assignee in retaking the goods, defendant was legally justified in selling them. And out of the proceeds he is entitled to retain such sum as represents reasonable storage charges, the reasonable cost of moving and transporting the goods from one store to another (as the proof indicates was done), and the reasonable cost of putting the appliances in a fit condition for sale in the market. *Cf. Garbark v. Newman,* 155 *Neb.* 188, 51 *N. W.* 2d 315 (*Sup. Ct.* 1952). These deduc-

tions, of course, are subject to competent proof as to their propriety and reasonableness.

The unsold appliances which have remained in defendant's possession during the pendency of this litigation are still the property of the plaintiff. They may be reclaimed, subject to reasonable storage charges. But if this is not done within a reasonable time after judgment in this court, defendant may dispose of them by *bona fide* sale in accordance with the views expressed herein.

The judgment of the Appellate Division is modified and the matter is remanded for trial of the issues outlined. Any necessary moulding of the pleadings or pretrial order may be made promptly.

*For modification*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS and PROCTOR—5.

*Opposed*—None.