## The Marbelite Company, Inc. v. Philadelphia

348

*Howard Gittis*, for plaintiff.
*Matthew W. Bullock, Jr.*, for defendant.

WEINROTT, J., March 2, 1966.—Plaintiff filed an action in assumpsit seeking to recover the contract price of certain traffic signal equipment purchased by the city. This equipment was delivered to defendant in June and July of 1962, and is being used by the City of Philadelphia. Said defendant, by way of new matter in its answer, contends that the equipment did not meet specifications and was not accepted by it. It further asserts that plaintiff, at the time it was issued the purchase orders, had on its payroll certain of defendant's employes who improperly permitted plaintiff to obtain bids, and that the orders were obtained as a result of rigged bidding. Finally, defendant states that plaintiff failed to exhaust its administrative remedies in accordance with the Philadelphia Home Rule Charter.

Plaintiff's reply denies that the employment by it of city employes as consultants was unlawful. It pleads that it properly and lawfully submitted its bids and received its orders in strict compliance with the home rule charter and all other applicable provisions of the law. Moreover, it denied that any of the materials was faulty or failed to meet specifications in any manner. It was on this state of the record that plaintiff filed a motion for judgment on the pleadings.

In analyzing the pleadings under the applicable

statutes and principles of law, we believe that as a matter of law, defendant accepted the traffic signal equipment. Section 2-606 of the Uniform Commercial Code of October 2, 1959, P. L. 1023, 12A PS §2-606, defines "acceptance" as follows:

"(1) Acceptance of goods occurs when the buyer . . .

"(c) does any act inconsistent with the seller's ownership; . . ."

Defendant city, in its answer or new matter, does not deny that it is using the equipment. Nor does it state the manner, if any, in which it was damaged or harmed by the alleged failure to comply with certain specifications, or the manner in which the purchase orders were issued or the bids obtained.

We believe the use of the equipment by defendant is patently inconsistent with the seller's ownership and, therefore, constitutes acceptance under the Uniform Commercial Code: Lang v. Fleet, 22 D. & C. 2d 361, affirmed per curiam, 193 Pa. Superior Ct. 365.

Since we have determined that defendant accepted the equipment, it is obligated to pay the contract price therefor. Payment would not in any manner preclude defendant from seeking such affirmative relief as may exist for the alleged failure of the equipment to comply with specifications. This right is specifically reserved under the provisions of the Uniform Commercial Code in section 2-607(2), 12 A PS §2-607(2), which states that acceptance of the goods precludes rejection of the goods accepted; however, it does not of itself impair any other remedy provided by this article 2 for nonconformity. Moreover, defendant could have counterclaimed for damages, if any were suffered, by reason of the alleged nonconformity to specifications. From the failure to counterclaim or so plead, we deem that the city was not damaged, monetarily or otherwise, as a result of the placement of the

order with plaintiff or by the purchase and use of the goods delivered to it.

If defendant city sought to rescind the contract based on a breach of warranty, it should have done so within a reasonable time after a reasonable opportunity to inspect the goods. It cannot be done after the buyer exercises an act of dominion over the goods or permits the goods to be altered or changed while in his exclusive possession.

The city had ample time to inspect, examine and test the equipment to determine whether the goods were of the quality warranted. Despite this, it has never offered to return the traffic equipment or to claim monetary damages in any amount. Its position appears to be that, even though it has used the equipment for a long period of time and has suffered no harm, it is not obligated to pay any sum to plaintiff.

There is nothing in the Philadelphia Home Rule Charter which requires plaintiff to do any more than it has done in the instant case prior to the institution of suit. We find nothing in section 6-402 of the home rule charter, or in any other section, which requires a supplier to bring its records to the controller's department as a condition precedent to the institution of suit against the city. In fact, the section which the city alleges to contain an administrative remedy provides none for suppliers. Moreover, in Hemphill v. Lenz, 413 Pa. 9, our Supreme Court specifically relieved this plaintiff of any duty to appear before or bring its records to the controller's department.

In view of the foregoing, we have heretofore entered judgment on the pleadings in favor of plaintiff, The Marbelite Company, Inc., and against defendant, City of Philadelphia.